## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**FLETCHER SMITH,**

      **Petitioner,**

**v.**                              **Case No. 4:19cv472-WS/MAF**

**SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,**

      **Respondent.**
_____/

## <u>REPORT AND RECOMMENDATION TO DENY § 2254 PETITION</u>

On September 24, 2019, Petitioner, Fletcher Smith, a prisoner in the custody of the Florida Department of Corrections, proceeding with counsel, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1.  Respondent filed a response on February 27, 2020, with record exhibits.  ECF No. 10.  On April 22, 2020, Petitioner filed a reply. ECF No. 12.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B).  After careful consideration of all the issues raised, the undersigned has determined that no evidentiary hearing is required for disposition of this case.  *See* Rule 8(a), R. Gov.

§ 2254 Cases in U.S. Dist. Cts.  For the reasons set forth herein, the pleadings and attachments before the Court show that Petitioner is not entitled to federal habeas relief and this § 2254 petition should be denied.

## Background and Procedural History

Petitioner was charged by Amended Information filed in the Second Judicial Circuit of Leon County, Florida, on January 17, 2013, with three counts of sexual battery in violation of section 794.011, Florida Statutes. Ex. 2 at 10.[1]  The Amended Information alleged in Count One, that on or between June 6, 2001, and June 8, 2008, Petitioner committed a capital sexual battery on K.S., a child under age 12 by a person age 18 or older, by penetrating her vagina with his fingers; Count Two, that on or between June 6, 2001, and June 8, 2008, Petitioner committed a capital sexual battery on K.S., a child under age 12 by a person age 18 or older, by penetrating her vagina with his penis; and Count Three, that on or between June 6, 2008, and June 8, 2010, while in a position of familial or custodial authority to K.S., Petitioner engaged in sexual activity with K.S., a child 12 years of age or older, but less than 18, by penetrating her vagina with his penis.  *Id.*

---

[1] Hereinafter, citations to the state court record, "Ex. –," refer to Exhibits 1 through 21 submitted in conjunction with Respondent's answer.  *See* ECF No. 10.

Jury trial was held on May 9, 2013, and Petitioner was found guilty of Count One and not guilty of Counts Two and Three.  Ex. 2 (ECF No. 10-2 at 237-465); Ex. 2 at 83-85.  Judgment was entered and Petitioner was sentenced to life in prison.  Ex. 2 at 86-93.  Petitioner appealed to the state First District Court of Appeal, raising one claim—that the trial court committed fundamental error in allowing the state to present two separate episodes of sexual battery to support Count One when that count only charged a single criminal act.  Ex. 3.  The district court of appeal affirmed per curiam without a written opinion.  Ex. 6.  *See* Smith v. State, 138 So. 3d 443 (Fla. 1st DCA 2014) (Table).

On March 6, 2015, Petitioner filed a pro se petition for writ of habeas corpus pursuant to Florida Rule of Appellate Procedure 9.141(d) in the First District Court of Appeal alleging ineffective assistance of appellate counsel.[2]  Ex. 12 (ECF No. 10-12).  The petition was denied "on the merits" without further discussion on March 20, 2015.  Ex. 13.  *See* Smith v. State, 212 So. 3d 1053 (Fla. 1st DCA 2015) (Mem.).

Petitioner filed a pro se amended motion for postconviction relief in the circuit court pursuant to Florida Rule of Criminal Procedure 3.850 on

---

[2] The claims of ineffective assistance (IAC) of appellate counsel were: (1) failing to supplement the record on appeal; and (2) failing to argue IAC of trial counsel regarding the motion for judgment of acquittal.  Ex. 12 at 1-6.

November 9, 2015, by the mailbox rule, raising ten grounds.[3]  Ex. 15 at 34-81.  An evidentiary hearing was held on December 13, 2017, where Petitioner appeared with counsel and testimony was taken from Petitioner and his trial counsel.  Ex. 15 at 103-234.  The postconviction court denied the motion on the record and, on January 2, 2018, entered an order denying postconviction relief for the reasons stated on the record.  Ex. 15 at 93, 221-32.  Petitioner appealed and the First District Court of Appeal affirmed without discussion on June 20, 2019.  Ex. 16, 20.  *See* Smith v. State, 273 So. 3d 949 (Fla. 1st DCA 2019) (Table).

On September 24, 2019, Petitioner filed his counseled petition for writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254 raising the following grounds for relief:

> (1) Trial counsel rendered ineffective assistance by failing to prepare Petitioner's trial testimony regarding his prior criminal convictions;
>
> (2) Trial counsel rendered ineffective assistance by failing to object to the introduction of other alleged sexual acts not charged in the indictment, resulting in a non-unanimous verdict; and

---

[3] The ineffective assistance of counsel claims raised in the amended Rule 3.850 motion were: (1) failing to object to prosecutor's comments; (2) failing to prepare Defendant's testimony concerning prior convictions and incarceration; (3) failing to request a bill of particulars; (4) failing to present Petitioner's Restoration of Civil Rights/Pardon to jury; (5) failing to object to clearing courtroom for victim's testimony; (6) failing to request medical examination of victim; (7) failing to file a motion in limine to preclude evidence of other sexual crimes not charged; (8) presenting an unreasonable trial strategy; (9) failing to file a motion to dismiss based on double jeopardy; and (10) failing to make a proper motion for judgment of acquittal.  Ex. 15 at 34-81.

(3) Trial counsel rendered ineffective assistance by failing to present evidence that he was pardoned for his prior criminal convictions.

## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for persons in state custody only under certain specified circumstances.  Section 2254(d) provides in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  *See also* Cullen v. Pinholster, 563 U.S. 170, 181 (2011); Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently

than this Court has on a set of materially indistinguishable facts." Williams

v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring). "Under

the 'unreasonable application' clause, a federal habeas court may grant the

writ if the state court identifies the correct governing legal principle from this

Court's decisions but unreasonably applies that principle to the facts of the

prisoner's case." *Id.* at 413 (O'Connor, J., concurring).

The Supreme Court has explained that "even a strong case for relief

does not mean the state court's contrary conclusion was unreasonable."

Harrington v. Richter, 562 U.S. 86, 102 (2011). The Court stated:

> As amended by AEDPA, § 2254(d) stops short of imposing a
> complete bar on federal-court relitigation of claims already
> rejected in state proceedings. . . . It preserves authority to
> issue the writ in cases where there is no possibility fairminded
> jurists could disagree that the state court's decision conflicts
> with this Court's precedents. It goes no further. Section
> 2254(d) reflects the view that habeas corpus is a "guard against
> extreme malfunctions in the state criminal justice systems," not
> a substitute for ordinary error correction through appeal.
> Jackson v. Virginia, 443 U.S. 307, 332, n.5 (1979) (Stevens, J.,
> concurring in judgment). As a condition for obtaining habeas
> corpus from a federal court, a state prisoner must show that the
> state court's ruling on the claim being presented in federal court
> was so lacking in justification that there was an error well
> understood and comprehended in existing law beyond any
> possibility for fairminded disagreement.

*Id.* at 102-03 (citation omitted). The federal court employs a " 'highly

deferential standard for evaluating state-court rulings, which demands that

state-court decisions be given the benefit of the doubt.' " Pinholster, 563

U.S. at 181 (quoting Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).

      "Before a federal court may grant habeas relief to a state prisoner,

the prisoner must exhaust his remedies in state court." O'Sullivan v.

Boerckel, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b).  The Petitioner

must have apprised the state court of the federal constitutional claim, not

just the underlying facts of the claim or a "somewhat similar state-law

claim." Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir. 1998) (quoting

Anderson v. Harless, 459 U.S. 4, 5-6 (1982)).  In order for remedies to be

exhausted, "the petitioner must have given the state courts a 'meaningful

opportunity' to address his federal claim." Preston v. Sec'y, Fla. Dep't of

Corr., 785 F.3d 449, 457 (11th Cir. 2015) (quoting McNair v. Campbell, 416

F.3d 1291, 1302 (11th Cir. 2005)).  Petitioner must "fairly present" his claim

in each appropriate state court in order to alert the state courts to the

federal nature of the claim.  Duncan v. Henry, 513 U.S. 364, 365 (1995);

Picard v. Connor, 404 U.S. 270, 275 (1971); O'Sullivan v. Boerckel, 526

U.S. 838, 845 (1999).  The State must have been provided the

" 'opportunity to pass upon and correct' alleged violations of its prisoners'

federal rights." Henry, 513 U.S. at 365 (quoting Picard, 404 U.S. at 275

(citation omitted)).  "This rule of comity reduces friction between the state

and federal court systems by avoiding the 'unseem[liness]' of a federal

district court's overturning a state court conviction without the state courts

having had an opportunity to correct the constitutional violation in the first

instance." O'Sullivan, 526 U.S. at 845; *see also* Picard, 404 U.S. at 275 ("If

the exhaustion doctrine is to prevent 'unnecessary conflict between courts

equally bound to guard and protect rights secured by the Constitution,' it is

not sufficient merely that the federal habeas applicant has been through the

state courts." (citation omitted)).

In regard to claims of ineffectiveness of trial counsel, the Petitioner

must have presented those claims in state court " 'such that a reasonable

reader would understand each claim's particular legal basis and factual

foundation.' " Ogle v. Johnson, 488 F.3d 1364, 1368 (11th Cir. 2007)

(citing McNair, 416 F.3d at 1302).

In order to obtain review where a claim is unexhausted and, thus,

procedurally defaulted, the Petitioner must show cause for the default and

prejudice resulting therefrom or a fundamental miscarriage of justice.

Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993).  In order to demonstrate

cause, Petitioner must show that an "external impediment, whether it be

governmental interference or the reasonable unavailability of the factual

basis for the claim, must have prevented petitioner from raising the claim."

Alderman v. Zant, 22 F.3d 1541, 1551 (1994) (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)); *see also* McCleskey v. Zant, 499 U.S. 467, 497 (1991) (emphasizing that the external impediment must have prevented the petitioner from raising the claim).  A federal court may grant a habeas petition on a procedurally defaulted claim without a showing of cause or prejudice if necessary to correct a fundamental miscarriage of justice. Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003).  In order to satisfy the miscarriage of justice exception, the Petitioner must show that a constitutional violation has occurred that "probably resulted in a conviction of one who is actually innocent"—that it is more likely than not that no reasonable juror would have convicted him—which is a stronger showing than is necessary to establish prejudice.  *See* Schlup v. Delo, 513 U.S. 298, 327 (1995).  This standard "thus ensures that petitioner's case is truly 'extraordinary.' "  *Id.* (citing McCleskey, 499 U.S. at 494).  Such a case is "extremely rare."  Schlup, 513 U.S. at 324.

This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits."  Pinholster, 563 U.S. at 181. The state court's factual findings are entitled to a presumption of correctness and to rebut that presumption, the Petitioner must show by clear and convincing evidence that the state court determinations are not

fairly supported by the record.  *See* 28 U.S.C. § 2254(e)(1).  However, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions" and "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  *See also* Swarthout v. Cooke, 562 U.S. 216, 222 (2011) ("[W]e have long recognized that 'a "mere error of state law" is not a denial of due process.' " (quoting Engle v. Isaac, 456 U.S. 107, 121, n.21 (1982))).

Further, under § 2254(d), federal courts have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."  Marshall v. Lonberger, 459 U.S. 422, 434 (1983).  "Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review."  Consalvo v. Sec'y, Dep't of Corr., 664 F.3d 842, 845 (11th Cir. 2011).  Credibility and demeanor of a witness are considered to be questions of fact entitled to a presumption of correctness under the AEDPA and the Petitioner has the burden to overcome the presumption by clear and convincing evidence.  *Id.*

For claims of ineffective assistance of counsel, the United States Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984).  To demonstrate deficient performance, a "defendant must show that counsel's performance fell below an objective standard of reasonableness."  *Id.* at 688.  Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Burt v. Titlow, 134 S. Ct. 10, 17 (2013) (quoting Strickland, 466 U.S. at 690).  Federal courts are to afford "both the state court and the defense attorney the benefit of the doubt."  *Id.* at 13.  The reasonableness of counsel's conduct must be viewed as of the time of counsel's conduct.  *See* Maryland v. Kulbicki, 136 S. Ct. 2, 4 (2015) (citing Strickland, 466 U.S. at 690).

To demonstrate prejudice under Strickland, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  466 U.S. at

694.  "A reasonable probability is a probability sufficient to undermine

confidence in the outcome."  *Id.*  For this Court's purposes, "[t]he question

'is not whether a federal court believes the state court's determination'

under the Strickland standard 'was incorrect but whether that determination

was unreasonable—a substantially higher threshold.' "  Knowles v.

Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550

U.S. 465, 473 (2007)).  "And, because the Strickland standard is a general

standard, a state court has even more latitude to reasonably determine that

a defendant has not satisfied that standard."  Mirzayance, 556 U.S. at 123.

It is a "doubly deferential judicial review that applies to a Strickland claim

evaluated under the § 2254(d)(1) standard."  *Id.*  Both deficiency and

prejudice must be shown to demonstrate a violation of the Sixth

Amendment.  Thus, the court need not address both prongs if the petitioner

fails to prove one of the prongs.  Strickland, 466 U.S. at 697.

### Ground 1: Failing to Prepare Petitioner's Trial Testimony and Informing the Jury that Petitioner Had Been Incarcerated

Petitioner contends that trial counsel rendered ineffective assistance

by failing to prepare his trial testimony concerning how to address his prior

criminal convictions.  ECF No. 1 at 5.  He argues that counsel's failure to

explain the significance of his prior convictions left him confused about the

meaning of a crime of dishonesty.  When asked at trial if he had been

convicted of a crime of dishonesty, he answered he had not, when he had in fact been convicted of theft. *Id.* at 5-6. He also contends that trial counsel rendered ineffective assistance by informing the jury that he had been incarcerated in 2001. *Id.* at 6.

Petitioner raised these claims in ground 2 of his Rule 3.850 motion and was provided an evidentiary hearing. Ex. 15 at 49-53. At the hearing, Petitioner testified that his trial counsel had no strategy and never discussed with him the pros and cons of testifying. *Id.* at 108-09. He said trial counsel never discussed with him the number of felony convictions he had, what it meant to have a felony conviction, or what a crime of dishonesty meant. *Id.* at 111. He testified that his trial counsel never went over any of his testimony with him prior to trial. *Id.* at 117.

Trial counsel testified at the evidentiary hearing that he could not recall exactly what was discussed with Petitioner prior to trial but was sure he met with him to go over trial strategy and discuss the decision to testify. *Id.* at 140, 142. Counsel conceded that it was likely that he did not discuss Petitioner's misdemeanor convictions with him and may not have advised him about a misdemeanor crime of dishonesty. *Id.* at 174. He remembered discussing with Petitioner that in a case such as this, where there was no corroborating evidence, he should testify because otherwise

the jury would have only the victim's testimony concerning what, if

anything, happened. *Id.* at 144-45.  Trial counsel testified that it was

Petitioner's decision whether to testify. *Id.* at 147-48.  Counsel also

testified that he made a tactical decision to allow the jury to hear that

Petitioner had been in prison in 2001 because the charges in the case

alleged that Petitioner had committed the sexual battery during a time

frame beginning in 2001 when he was incarcerated. *Id.* at 156.  Counsel

felt it provided a partial alibi for part of the charged time period and tended

to show a shoddy investigation by the State. *Id.* at 187.

The postconviction court denied the claim, finding Petitioner's

testimony that trial counsel did not discuss the case with him prior to trial

"not credible at all" and "not believable."  The court found trial counsel's

testimony credible that he did communicate with Petitioner, that Petitioner

was active in his own representation, and that Petitioner made the decision

whether to testify.  Ex. 15 at 223, 224.  Relying on the transcript of a

sidebar discussion between trial counsel and the trial judge, the

postconviction court found that trial counsel was not deficient in his trial

strategy to allow testimony about the nature of Petitioner's prior crimes so

that the jury would know they were not sexual in nature. *Id.* at 225-26.

Because the jury heard that Petitioner had a number of convictions, it was

not unreasonable trial strategy for counsel to allow the jury to hear that none were for sex crimes. The postconviction court also found it was not deficient representation for trial counsel to allow the jury to hear that Petitioner had been incarcerated in 2001 during part of the time alleged in the Information. *Id.* at 227. Petitioner appealed denial of this claim, Ex. 16, and the First District Court of Appeal affirmed without discussion. Smith v. State, 273 So. 3d 949 (Fla. 1st DCA 2019) (Table).

Respondent contends that the postconviction court found trial counsel's testimony that he discussed trial testimony with Petitioner more credible and that even if counsel were deficient in preparing Petitioner, prejudice has not been shown. Petitioner testified in his trial, denying that he ever touched K.S. inappropriately. He was then asked on cross-examination if he had been convicted of any felonies. Ex. 2 at 100 (May 9, 2013, transcript pagination). He responded as follows:

A  Maybe two at one time in '95, around '95 - - between '95 and '97.

Q  Okay. You think you only have two felony convictions?

A  I mean, I'm not understanding what you mean.

Q  Could it have been five?

A  You said it could be five? The only one - - the only one I remember ever being convicted of was in '95 to '97 during that time.

Q  Do you have convictions for crimes of dishonesty?

A  No, sir.

Q  You don't have any?

*Id.* at 100-01.  Rather than have the judge inform the jury that Petitioner

was a five-time convicted felon with three crimes of dishonesty, defense

counsel wanted the details of the convictions to be explained.  *Id.* at 101.

The prosecutor then showed Petitioner copies of three judgments and

asked him if he had three petit theft convictions.  Petitioner responded and

the following ensued:

> A  But ain't nothing on this here say about dishonesty,
> nothing.
> Q  Well, let's talk about that. You have three petit thefts;
> correct?
> A  A petit theft?  You said dishonesty, anything about
> dishonesty.
> Q  Petit theft is a crime of dishonesty.  So, you would
> agree you have three petit thefts; correct?
> A  I can't agree to something I'm not familiar with like that
> there.  You said dishonesty, conviction of dishonesty.
> Q  Okay.  You have three burglary convictions; correct?
> A  That's what this paper say right here, burglary of a
> conveyance and petit theft.

*Id.* at 105-06.  It also came out that Petitioner had been convicted of

burglary of a dwelling and attempted strongarm robbery.  *Id.* at 107-08.  On

redirect examination, Petitioner testified that the multiple convictions

referred to by the prosecutor were in three different cases resolved in 1995

and 1997, which is what he was referring to when he answered that he had

been convicted two times. *Id.* at 119. In closing argument, the prosecutor referred to Petitioner as a "multiple-time convicted felon" without elaboration on the exact number or nature of the convictions. *Id.* at 187.

Even assuming counsel was deficient in preparing Petitioner to answer the questions correctly regarding his prior convictions, Petitioner has not shown prejudice from that error. Petitioner's testimony on cross-examination made clear he did not understand the legal significance of the questions and answers and, thus, did not appear that he was trying to mislead the jury. Moreover, in light of the testimony at trial, Petitioner cannot demonstrate a reasonable probability—one sufficient to undermine confidence in the verdict—that but for any error of counsel, the result of the trial would have been different. The victim, K.S., age 16 at the time of trial in 2013, testified that when she was around five years old, she was introduced to Petitioner as her father. *Id.* at 38-39. She testified that he began to spend time with her and when she was six-years-old he took her to his apartment where he undressed her and told her it would not hurt when he then rubbed her vagina with his fingers but did not penetrate her. *Id.* at 40, 47. She testified the touching continued "pretty much every time" he picked her up. *Id.* at 47. She testified there were other times he put his finger in her vagina when she was still under the age of twelve. *Id.* She

testified that when she was age eleven, he took her to a hotel, undressed

her, and "stuck his finger in" her vagina.[4]  *Id.* at 48-49.  She said she did

not report these acts during the time they were occurring because she was

afraid no one would believe her.  *Id.* at 51.  She finally told her godmother

that Petitioner had been touching her inappropriately, but not in detail, and

her godmother took her to her mother, who then called the police.  *Id.* at 52,

55.  K.S. learned that Petitioner was not her biological father when she was

age thirteen.  *Id.* at 53.  K.S. said it was her decision to stop going

anywhere with Petitioner and he stopped coming around.  *Id.*

K.S. testified she did tell her godmother that Petitioner had sex with

her, but both she and her godmother were upset and crying at the time.  *Id.*

at 58.  The victim's godmother testified that in 2011, K.S. began to cry and

told her that Petitioner touched her inappropriately without much other

detail.  *Id.* at 158.  She testified that when she asked K.S. if Petitioner had

sex with her, K.S. gave "more of a head nod, like kind of down-ish, because

she had - - her head already was down . . ."  *Id.*  On cross-examination,

K.S.'s godmother agreed that K.S. never told her Petitioner had sex with

her.  *Id.* at 169.  The jury found Petitioner guilty of Count One, that on or

---

[4] She also testified he penetrated her with his penis when she was under age
twelve and again when she was over age twelve, but he was found not guilty of those
offenses.  Ex. 2 at 49-50 (May 9, 2013, transcript pagination).

between June 6, 2001, and June 8, 2008, Petitioner committed sexual battery on K.S., by penetrating her vagina with his fingers. He was found not guilty of Count Two, penetrating her vagina with his penis, and Count Three, sexual battery on K.S., a person in familial or custodial authority, by penetrating her vagina with his penis. *Id.*

Petitioner has not shown that the state court's determination of this claim was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or that it was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d).

"The question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' " Mirzayance, 556 U.S. at 123 (quoting Landrigan, 550 U.S. at 473). The Strickland standard is a general standard; thus, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. Mirzayance, 556 U.S. at 123. It is a "doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard." *Id.* Both deficiency and prejudice must be shown

to demonstrate a violation of the Sixth Amendment.  Both prongs have not been demonstrated in this claim.  Petitioner did not demonstrate a reasonable probability that but for any error of counsel in failing to prepare his testimony concerning his prior convictions, or in allowing the jury to hear that he was incarcerated during part of the time frame in which the offenses occurred, the outcome of the trial would have been different.  *See* Strickland, 466 U.S. at 694.  Ground One should be denied.

### Ground Two: Failure to Object to Uncharged Acts

Petitioner next contends that trial counsel rendered ineffective assistance by failing to object to the introduction of alleged sexual acts not charged in the indictment, resulting in a possible non-unanimous verdict on Count One.  ECF No. 1 at 7.  Petitioner states in his petition that this ground was not presented to the state trial court in the Rule 3.850 motion because he was not represented by counsel in that proceeding, but contends that it is not procedurally barred pursuant to Martinez v. Ryan, 566 U.S. 1 (2012).  ECF No. 1 at 12-13.  Respondent, however, asserts that the claim was raised in a "variety of argument below as trial counsel error in his 3.850" and urges the Court to decide the claim on the merits. ECF No. 10 at 9, 14.

In Claim 7 of his Rule 3.850 motion in state court, Petitioner argued that trial counsel rendered ineffective assistance for failing to move in limine to preclude evidence of other sex acts not charged as a crime in the Information.  Ex. 15 at 63.  He specifically cited testimony concerning sexual acts of Petitioner when K.S. was age six that did not include penetration by a finger.  *Id.* at 67.  In that claim, Petitioner also argued that trial counsel should have requested a "Williams Rule" instruction to tell the jury that evidence of other acts not charged should be considered only for limited purposes and not for proof of the crime charged.  *Id.* at 68.  He contended in state court that the only evidence of penetration by a finger was contained in the testimony of K.S. that Petitioner took her to a hotel and penetrated her with a finger and with his penis.  *Id.* at 65.  He argues that because the jury acquitted him of penile penetration, the jury did not believe any of her testimony about the hotel incident and must have relied upon her testimony of the incident when she was six to convict him for Count One.  *Id.* at 68.

The postconviction court denied the claim after an evidentiary hearing, concluding that the State was "permitted to present testimony of multiple acts if this is an ongoing type of conduct and that's what was presented.  That's why counsel had no grounds really to object on or move

to prevent that testimony. And, therefore, there's no deficient performance." *Id.* at 228. The court also concluded that if Petitioner had asked for a statement of particulars, there could have been more counts filed. *Id.* On appeal from denial of postconviction relief, Petitioner, with counsel, argued that trial counsel should have filed a motion in limine, "or thereafter object" to prevent introduction of evidence of uncharged sex acts. Ex. 16 at 29-30. In the appellate court, Petitioner argued that the evidence of this uncharged act of touching when K.S. was age six could have enabled the jury to reach a non-unanimous verdict on Count One. *Id.* at 30, 32. The appellate court affirmed denial of postconviction relief.

In this Court, Petitioner argues not only that counsel should have objected to the incident of touching when K.S. was age six, but also should have objected to the testimony of K.S. that Petitioner touched her inappropriately on other unspecified occasions between age six and age eleven and put his finger in her vagina when she was different ages. ECF No. 1 at 8-9; ECF No. 12 at 5-6. He contends that testimony of those instances of sexual abuse resulted in a non-unanimous verdict. ECF No. 1 at 7, 9; ECF No. 12 at 7.

To exhaust a federal habeas claim in state court, Petitioner was required to apprise the state court of the federal constitutional claim, not

just the underlying facts of the claim or a "somewhat similar state-law claim." Snowden, 135 F.3d at 735 (quoting Anderson, 459 U.S. at 5-6). The claims raised in the postconviction court and on appeal may be versions of the claim here—or somewhat related claims—but it is debatable whether the specific claim raised here was exhausted in state court. Petitioner recognized this fact and seeks relief pursuant to Martinez.[5] However, analysis under Martinez is unnecessary because the claim is without merit and should be denied. "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2).

The Information alleged in Count One that between June 6, 2001, and June 8, 2008, when K.S. was less than twelve years old, Petitioner penetrated her vagina with his finger. Ex. 2 at 10. K.S. testified that

---

[5] In Martinez v. Ryan, the Supreme Court held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." 566 U.S. at 9. In particular, "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the [State's] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." Id. at 17. To overcome the default, Petitioner must show "the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." Id. at 14.

Petitioner began touching her inappropriately when she was age six and it continued for about six years "pretty much every time" he picked her up and that he stuck his finger inside her vagina when she was "different ages." Ex. 2 at 47-48 (May 9, 2013, transcript pagination). She also testified to an instance at age six when Petitioner rubbed her vagina but did not penetrate her and at age eleven when Petitioner took her to a local hotel and inserted his finger and then his penis into her vagina. *Id.* at 47-49. The prosecutor argued in closing that, as to Count One, the State must prove that Petitioner penetrated her vagina with his finger and that K.S. testified he penetrated her with his finger while at the hotel. *Id.* at 194. Although K.S. also testified that Petitioner touched her inappropriately at age six, when he rubbed her vagina but did not penetrate her, she also testified that he penetrated her vagina with his finger at other unspecified times at different ages and, specifically, while at the hotel when she was age eleven.[6] Even so, in closing argument, the prosecutor focused on the specific hotel incident as providing proof of Count One. *Id.* at 194

---

[6] The court in <u>Whittingham v. State</u>, 974 So. 2d 616, 618-19 (Fla. 4th DCA 2008), has explained: "[T]he state may charge a defendant in child sexual abuse cases in a manner not permitted in other types of criminal cases, expanding time periods for the commission of offenses and grouping types of offenses together. . . ." In <u>State v. Generazio</u>, 691 So. 2d 609, 611 (Fla. 4th DCA 1997), the court held that sexual abuse against a child may be charged as one count for each type of sexual act that occurred "on one or more occasions" within a lengthy time period. This principle is what the postconviction court referred to in finding trial counsel was not deficient for failing to

The jury was instructed at the close of the evidence that to prove Count One, the state must prove beyond a reasonable doubt that K.S. was less than 12 years of age, that Petitioner penetrated her vagina with an object, and that he was 18 years of age or older.[7]  Ex. 2 at 174 (May 9, 2013, transcript pagination). The jury was instructed that the "verdict must be based on the evidence and on the law contained in these instructions." *Id.* at 179.  The jury was further instructed that "[o]nly one verdict may be returned as to each crime charged.  This verdict must be unanimous, that is, all of you must agree to the same verdict."  *Id.*

"A jury is presumed to follow its instructions."  Weeks v. Angelone, 528 U.S. 225, 234 (2000) (citing Richardson v. Marsh, 481 U.S. 200, 211 (1987)); Hallford v. Culver, 459 F.3d 1193, 1204 (11th Cir. 2006); United States v. Ramirez, 426 F.3d 1344, 1352 (11th Cir. 2005)).  *See also* Brown v. Jones, 255 F.3d 1273, 1280 (11th Cir. 2001) (stating that jurors are presumed to have followed their instructions and applying this presumption

---

object to testimony of other instances of penetration by Petitioner's finger.  *See* Ex. 15 at 228.

[7] A finger is considered an "object' within the meaning of section 794.011.  *See, e.g.*, Harrison v. State, 360 So. 2d 431, 423 (Fla. 1978); Holmes v. State, 842 So. 2d 187, 188 (Fla. 2d DCA 2003); Erwin v. Sec'y, Dep't of Corr., No. 3:12cv115/LAC/EMT, 2013 WL 790983, at *12 (N.D. Fla. Feb. 12, 2013), *report and recommendation adopted*, 2013 WL 790942 (N.D. Fla. Mar. 4, 2013), *aff'd sub nom.* Erwin v. Sec'y, Fla. Dep't of Corr., 568 F. App'x 749 (11th Cir. 2014) (unpublished).

in a § 2254 proceeding to support a conclusion that a petitioner could not satisfy the prejudice prong of an ineffective-assistance-of-counsel claim); Palumbo v. Sec'y, Fla. Dep't of Corr., No. 18-10186-C, 2018 WL 3633867, at *2 (11th Cir. May 11, 2018) (same).  Petitioner has presented nothing to overcome this presumption or to suggest that the jury's verdict was less than unanimous.  Further, a general unanimity instruction has been found usually sufficient to protect a defendant's Sixth Amendment right to a unanimous verdict.  *See, e.g.*, United States v. Hiland, 909 F.2d 1114, 1139 (8th Cir. 1990) (citing United States v. Hernandez-Escarsega, 886 F.2d 1560, 1572 (9th Cir. 1989); United States v. Phillips, 869 F.2d 1361, 1366-67 (10th Cir. 1988); and United States v. Murray, 618 F.2d 892, 898 (2d Cir.1980)).  "In the routine case, a general unanimity instruction will ensure that the jury is unanimous on the factual basis for a conviction, even where an indictment alleges numerous factual bases for criminal liability." United States v. Gaddy, 174 F. App'x 123, 125 (3d Cir. 2006) (unpublished) (quoting United States v. Beros, 833 F.2d 1405, 1407 (3d Cir. 1987)).

Even if counsel had objected to testimony of the rubbing incident, it would have been within the trial court's sound discretion whether to admit that evidence—a ruling that will not be disturbed absent an abuse of

discretion.[8]  *See, e.g.*, Peterson v. State, 2 So. 3d 146, 158 (Fla. 2009).

Petitioner cannot demonstrate a reasonable probability that if an objection

had been lodged, the evidence would have been excluded and the

outcome of the trial would have been different.

Under the evidence, the closing arguments, and the instructions

given in this case, no juror could find that the rubbing incident at age six

constituted proof of Count One such that the verdict was not unanimous.

Sufficient evidence of an act of penetration when K.S. was under age

twelve was presented to prove Count One as charged, and the jury was

instructed their verdict must be unanimous as to the allegation in Count

One.  The jury found Petitioner guilty of Count One.  Petitioner has not

shown a reasonable probability that, but for trial counsel's failure to object

to the evidence of touching when K.S. was age six, or to any other

testimony about Petitioner penetrating K.S. with his finger, the outcome of

the trial would have been different or that the verdict was not unanimous.

Because both prongs of Strickland have not been proven, Petitioner

has not shown that the adjudication of his postconviction claim resulted in a

---

[8]  Testimony that Petitioner touched K.S. inappropriately beginning at age six could be considered relevant to explain the history and nature of the relationship between Petitioner and K.S. and the context of ongoing abuse that escalated from rubbing to penetration, which was the crime charged.  *See, e.g.*, Griffin v. State, 639 So. 2d 966, 970 (Fla. 1994) (evidence is admissible that describe the events leading up to the crime charged).

decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court or that it was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  *See* 28 U.S.C. § 2254(d).  Federal habeas relief on Ground Two should be denied.

## Ground Three: Evidence of A Pardon

In his last claim, Petitioner contends that trial counsel rendered ineffective assistance by failing to present evidence that Petitioner was pardoned for his prior criminal convictions.  ECF No. 1 at 11.  He argues that credibility was the crucial factor in his trial and that the prosecutor insinuated that he had never been pardoned for his convictions.  *Id.*  At the evidentiary hearing, trial counsel could not recall if he had seen clemency papers prior to trial or if he requested copies of them.  Ex. 15 at 151.  Although it appears that trial counsel did not obtain copies of a clemency order prior to trial, Petitioner's family obtained documents, showing not that Petitioner had been pardoned but that his civil rights had been restored, and provided them to counsel during trial.  The documents were presented to the jury at the close of the case.  Petitioner raised this claim as Ground Four in his Rule 3.850 motion in state court, where he argued that if counsel had obtained the record of clemency and presented it to the jury

during Petitioner's initial testimony, the jury would probably have viewed his credibility more favorably and the result of the proceeding would have been different. Ex. 15 at 20, 58.

The postconviction court denied the claim, noting that having civil rights restored was not the same as having received a pardon, and the court had no evidence that Petitioner received a pardon.[9] *Id.* at 229. The court also found that even if counsel was deficient in failing to present evidence of a pardon, no prejudice was shown because prior convictions can be presented despite a pardon. *Id.* at 230. The First District Court of Appeal affirmed denial of the claim.

During trial, defense counsel recalled Petitioner to testify that after he was released from prison, he had his civil rights restored. Ex. 2 at 146-47. On cross-examination, the prosecutor asked Petitioner if he had a copy of a document showing his civil rights had been restored, to which Petitioner answered that he did not have it with him, but that his lawyer had it. *Id.* at 147. At the conclusion of trial, defense counsel asked to reopen his case in order to present a copy of a record of the Office of Executive Clemency

---

[9] In the Rule 3.850 motion, Petitioner variously referred both a "pardon" and restoration of civil rights. Ex. 15 at 20-21. On appeal from denial of postconviction relief, Petitioner refers only to evidence of a pardon, as he does in this Court. Ex. 16 at 35-38; ECF No. 1 at 11.

indicating Petitioner's civil rights had been restored.  Ex. 2 at 170 (transcript pagination); Ex. 2 (ECF No. 10-2 at 487).  The prosecutor did not object and the document was admitted into evidence.  *Id.* at 173.  During closing argument, trial counsel argued to the jury that Petitioner had not been hiding anything concerning his prior convictions and, just as Petitioner had truthfully testified, defense Exhibit 1 showed his civil rights had been restored.  Ex. 2 at 197-98 (May 9, 2013, transcript pagination).

As a condition for obtaining habeas corpus relief from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103.  The Court employs a " 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.' " Pinholster, 563 U.S. at 181 (quoting Woodford, 537 U.S. at 24).

Petitioner has not shown that the state courts' denial of postconviction relief on this claim resulted in a decision that was contrary to any federal law as determined by the Supreme Court or was an unreasonable determination of the facts in light of the evidence.  The jury

did learn that Petitioner's civil rights were restored and were provided documentary evidence of that fact. That evidence confirmed that Petitioner was truthful when he testified that his civil rights had been restored. Even with restoration of rights or even a pardon, the prosecution was entitled to inform the jury concerning Petitioner's convictions as a matter of impeachment. *See* § 90.610(2), Fla. Stat. (2103) ("[T]he granting of a pardon relating to such crime does not render evidence of the conviction . . . for which the pardon was granted inadmissible").

Moreover, Petitioner's argument is speculative and conclusory that if the jury had learned of the restoration of civil rights earlier in the trial, there is a reasonable probability—one sufficient to undermine confidence in the outcome—that the result of the trial would have been different. Even if counsel should have obtained and provided the document when Petitioner first testified, prejudice has not been established pursuant to the requirements of <u>Strickland</u>. Trial counsel did present the clemency record to the jury and argued that Petitioner was truthful when he testified that he had his civil rights restored. Petitioner has not demonstrated entitlement to relief on this claim and this ground should be denied.

## Conclusion

Based on the foregoing, Petitioner Fletcher Smith is not entitled to federal habeas relief.  Accordingly, the § 2254 petition (ECF No. 1) should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  The parties shall make any argument as to

whether a certificate should issue by objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied.  *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## <u>Recommendation</u>

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the § 2254 petition (ECF No. 1).  It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on May 21,2020.

s/ Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control</u>. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**